UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHANE SNOWFLY,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>ALEJANDRO REYES, Warden MDSP; and AARON HAYNES, Medical Director,<br><br>　　　　　　　Defendants. | 4:24-CV-04194-RAL<br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL AND 1915A SCREENING DISMISSING COMPLAINT |

Plaintiff Shane Snow Fly[1] an inmate at the Mike Durfee State Prison (MDSP) filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Snow Fly's motion for leave to proceed in forma pauperis, and Snow Fly timely paid his initial partial filing fee. Doc. 8. Snow Fly also moves for the appointment of counsel. Doc. 6.

**I.     1915A Screening**

　　**A.     Factual Background as Alleged by Snow Fly[2]**

In May 2022, Snow Fly was seen by MDSP Health Services due to his complaint of serious neck pain, and an MRI was ordered. Doc. 2 ¶ 3. In June 2022, the MRI of Snow Fly's spine occurred and showed that he had two herniated disks at the C-3 and C-4 vertebrae. Id. ¶ 4; Doc. 1 at 4–5. After a year of complaining about the pain, in July 2023, Snow Fly was sent for physical therapy, which was not helping with his pain. Doc. 1 at 5; Doc. 2 ¶ 5. Snow Fly was placed on a

---

[1] In Plaintiff's filings, he variously spells his last name as "Snowfly" and "Snow Fly." Because the prisoner trust account report generated by the MDSP spells his last name as "Snow Fly," this Court adopts that spelling. See Doc. 5.

[2] This Court takes the facts alleged by Snow Fly as true in screening his complaint.

broken cervical traction machine during physical therapy. Doc. 1 at 4–5. He filed grievances and complained to MDSP Warden Alejandro Reyes, South Dakota Department of Corrections Medical Director Dr. Aaron Haynes, and nursing staff about how the machine caused him further pain and how the head strap on the machine was worn and ready to snap. Id. at 2, 4–6. Defendants ignored his complaints, refused to fix the machine, and assured him that the machine was usable. Id. at 4–6. On September 21, 2023, the head strap snapped when Snow Fly was using the machine, which caused him pain in his neck. Id.; Doc. 2 ¶ 9. On April 16, 2024, Snow Fly had another MRI, which revealed that Snow Fly had a third herniated disk. Doc. 3 at 3.

Snow Fly filed an informal resolution request, an administrative remedy request, and an appeal to the secretary of corrections about his injury due to medical staff's negligence. Id.; Doc. 2 ¶¶ 12–14; Doc. 2-1 at 1–4, 11–13 (Snow Fly's grievances and responses). After the injury, Snow Fly was seen at medical multiple times related to his pre-existing injury and new injury caused by the machine. Doc. 2 ¶¶ 10–11, 15–17, 19–21, 23–26; Doc. 2-1 at 5–10, 15–43 (Snow Fly's medical records related to the visits); Doc. 3 at 2–3. He continued to suffer from severe pain, numbness, stiffness, tingling, headaches, decreased range of motion, sharp pain in his legs when lying down, paresthesia in both legs when lying down, legs fall asleep, paresthesia in his hands when laying on his side, muscle spasms, shaking and trembling from his shoulder to his hands, and difficulty drinking and eating due to lack of movement. Doc. 2 ¶¶ 10–11, 15–21, 23–26. To assist with Snow Fly's symptoms, he was ordered a heating pad, Lidocaine patch, diclofenac gel, and lay in; he was also scheduled for an epidural. Id. ¶¶ 12, 22, 26. Due to the neck pain, Snow Fly quit his job as a welder. Id. at 5.

Snow Fly sues Reyes and Dr. Haynes in their individual and official capacities. Doc. 1 at 2. Snow Fly sues defendants for violating his rights under the Eighth and Fourteenth Amendments

and for negligence and medical malpractice. Id. at 4–6. He seeks $2,500,000 in monetary damages and $800,000 in punitive damages. Id. at 7; Doc. 3 at 7. He also requests "[a]ttorney fees to be determined by the court or 1 million Dollars[.]" Doc. 1 at 7; see also Doc. 3 at 7. Snow Fly seeks the following injunctive relief: specialized medical treatment for his injury, continued medical treatment for all medical issues, and an order prohibiting retaliation for filing his complaint. Doc. 1 at 7; Doc. 3 at 7.

**B.    Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true." 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

    C.    **Legal Analysis**

    1.    **Official Capacity Claims for Money Damages**

Snow Fly brings claims against both defendants in their official capacities for money damages. Doc. 1 at 2, 7. Both defendants are employees of the State of South Dakota. See generally id. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. Here, Snow Fly seeks both money damages and injunctive relief. Doc. 1 at 7. The State of South Dakota has not waived its sovereign immunity. Thus, Snow Fly's claims against defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 2. Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive Relief

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Snow Fly's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

Snow Fly alleges a Fourteenth Amendment claim for deliberate indifference to his serious medical needs. Doc. 1 at 4. He also alleges a claim under the "8th Amendment by way of the 14th Amendment as to Cruel and Unusual Punishment for Medical Negligence resulting in severe medical issues." Id. at 5. A pretrial detainee's conditions of confinement claims fall under the Fourteenth Amendment, but a convicted inmate's claims fall under the Eighth Amendment.

5

Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). Snow Fly was an inmate, not a pretrial detainee at the time the alleged events occurred. See Offender Locator, S.D. Dep't of Corr., https://docadultlookup.sd.gov/adult/lookup/details/?id=EX7NMX8WMKU= (last visited May 27, 2025). Thus, this Court liberally construes Snow Fly's claims as arising under the Eighth Amendment.

### a.  Deliberate Indifference to Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37)

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been

diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

To the extent that Snow Fly's complaint could be liberally construed to allege an Eighth Amendment claim for delay of treatment because he was not provided physical therapy for a year, he has failed to state a claim against the defendants he has named. Doc. 1 at 5; Doc. 2 ¶ 5. He has not alleged that Dr. Haynes or Reyes were aware of his neck pain in or around June of 2022 and were deliberately indifferent in delaying the start of physical therapy until June 2023. See generally Docs. 1, 2. Indeed, Snow Fly's complaint implies that a Dr. Van Winkle was involved in his care and prescribed physical therapy. Doc. 1 at 5. Snow Fly may have such a claim against someone, but has not pled it adequately here.

Snow Fly also alleges that defendants were negligent because after notice that the head strap on the cervical traction machine was worn and ready to snap, they did not replace the strap, which caused further injury to his spine. Doc. 1 at 2, 4–6. Snow Fly has alleged that he suffered from a herniated disk, but he has alleged mere negligence and not deliberate disregard of his serious medical needs. Id. Snow Fly does not allege that he was denied or provided inadequate treatment for his medical needs. Id. Instead, he alleges that defendants were negligent for failing to replace a strap on a medical machine. Id.

In response to treatment of his injury from the machine, Snow Fly claims that he was seen by Health Services the day after his injury. Doc. 2 ¶ 10; Doc. 2-1 at 5–7. Further, Snow Fly

provided his medical records showing that he was seen by Health Services or relayed his concerns to Health Services at least thirteen times from the date he was injured until April 19, 2024. Doc. 2-1 at 5–10, 15–43 (showing medical visits or report of concerns on September 22, 2023; September 25, 2023; October 2, 2023; October 8, 2023; October 10, 2023; October 16, 2023; November 1, 2023; November 14, 2023; December 11, 2023; January 11, 2024; February 21, 2024; April 17, 2024; and April 19, 2024). He also does not allege any facts indicating that Dr. Haynes[3] and Reyes were involved with decisions related to his healthcare after the alleged injury.[4] See generally Doc. 1. Thus, Snow Fly has not alleged sufficient facts for his Eighth Amendment deliberate indifference to serious medical needs claims to survive § 1915A screening, and his Eighth Amendment deliberate indifference to serious medical needs claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### b. Deliberate Indifference to Conditions of Confinement

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer, 511 U.S. at 832). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted).

---

[3] Snow Fly claims that Dr. Haynes "[m]akes health care policies for all of the Department of Corrections in the State of South Dakota and was Deliberately Indifferent to Plaintiff[']s serious Medical needs." Doc. 1 at 2. But he does not allege that any particular prison policy caused a violation of his Eighth Amendment rights, nor has he alleged that his injury occurred from Dr. Haynes's failure to train or supervise his staff. See generally id.

[4] To the extent that Snow Fly's complaint could be liberally construed to allege an Eighth Amendment claim for failure to replace the strap to allow him to use the machine again, Doc. 2 ¶ 22, he fails to state a claim because "[p]risoners do not have a constitutional right to any particular type of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Here, Snow Fly claims that Reyes and Dr. Haynes were made aware that the strap on the medical machine was worn and in need of repair.[5] Doc. 1 at 2, 4–6. But defendants failed to take action to remedy the strap. Id. Failure to investigate or repair an exercise machine may in some circumstances amount to mere negligence, but not a violation of the Eighth Amendment. See Harbert v. Griffin, 2018 WL 10517098, at *1–2 (N.D. Ind. Feb. 13, 2018) (dismissing an Eighth Amendment conditions of confinement claim during § 1915A screening when prison staff were aware that inmates had stood on weight blocks of a weight-lifting machine but took no action, which resulted in the cable chord snapping while plaintiff used the machine, because such

---

[5] Snow Fly claims that Reyes was made aware of the need for repair because Snow Fly had filed grievances  Doc. 1 at 2. Although this Court takes Snow Fly's allegation as true at this stage, this Court notes that the only copies of grievances or requests that Snow Fly submitted to this Court were responded to by Kelly Tjeerdsma, Tammy Doyle, and Kellie Wasko, not Reyes, and all are dated after his injury occurred. Doc. 2-1 at 1–4, 11–13.

9

condition did not exceed contemporary bounds of decency); Fitzgerald v. Corr. Corp. of Am., 2009 WL 1196127, at *3 (D. Colo. Apr. 30, 2009) ("Plaintiff's claim fails because no matter how artfully phrased, a malfunctioning piece of exercise equipment, even if negligently maintained, does not constitute a sufficiently serious condition to implicate the Eighth Amendment's ban on Cruel and Unusual Punishments."), amended in part 2009 WL 1765672 (D. Colo. June 22, 2009); Walton v. Marcy, 2025 WL 332535, at *1–5 (E.D. Mich. Jan. 29, 2025) (dismissing pro se prisoner's complaint during § 1915 screening when plaintiff was injured using an exercise machine that had a loose wire after he notified defendant of the issue because a loose wire may pose the possibility or an injury but "it does not objectively pose a substantial or excessive risk of serious harm sufficient to state a constitutional violation of the prisoner's rights" and because plaintiff had failed to sufficiently allege that a loose wire "would cause an excessive risk to inmate health or safety so that Defendant was deliberately indifferent to such a risk of such harm to Plaintiff"). Because Snow Fly has not shown that the worn strap subjected him to a substantial risk of harm that amounts to deliberate indifference to any risk and has failed to allege facts showing that defendants were more than merely negligent to any potential risk, Snow Fly's Eighth Amendment deliberate indifference to conditions of confinement claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3.  **State-Law Tort Claims**

Snow Fly sues Reyes and Dr. Haynes for negligence and medical malpractice, which are state-law claims. Doc. 1 at 6; Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005) (holding that negligence is not actionable under § 1983). Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Because

negligence arises under state law, this Court does not have federal question jurisdiction over these claims. Snow Fly also has not alleged diversity jurisdiction over his state-law claims. Indeed, all the parties appear to reside in the same state–South Dakota. 28 U.S.C. § 1332(a); OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Thus, because all claims over which a federal court might have original jurisdiction have been dismissed, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

**II.     Conclusion**

Accordingly, it is

ORDERED that Snow Fly's official capacities claims for money damages are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Snow Fly's Eighth Amendment deliberate indifference to serious medical needs claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1). It is further

ORDERED that Snow Fly's Eighth Amendment deliberate indifference to conditions of confinement claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Snow Fly's negligence and medical malpractice claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3). It is finally

ORDERED that Snow Fly's motion to appoint counsel, Doc. 6, is denied as moot.

DATED May 27th, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE